# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Ronald Wade Moak, Respondent.

Appellate Case No. 2019-000202

---

Opinion No. 27889
Submitted April 17, 2019 – Filed May 15, 2019

---

### DEFINITE SUSPENSION

---

John S. Nichols, Disciplinary Counsel, and Sabrina C.
Todd, Senior Assistant Disciplinary Counsel, both of
Columbia, for the Office of Disciplinary Counsel.

George W. Speedy and Zack Owen Atkinson, both of
Speedy, Tanner, Atkinson & Cook, LLC, of Camden, for
Respondent.

---

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (the Agreement) pursuant to Rule 21, RLDE, Rule 413, SCACR.  In the
Agreement, respondent admits misconduct and consents to the imposition of a
definite suspension of not more than one year.  We accept the Agreement and
suspend respondent from the practice of law in this state for one year from the date
of this opinion.  The facts, as set forth in the Agreement, are as follows.

## Facts

*Matter I*

Respondent agreed to represent D.D. on seven drug charges and one count of
financial identity theft for a flat fee.  D.D. was arrested on a bench warrant several
months before respondent's representation began and remained in jail throughout
the representation, as respondent's efforts to have the bench warrant lifted were

unsuccessful. Respondent shared important developments in the case with D.D., but did not write D.D. and did not recall receiving the numerous letters D.D. reports having sent respondent. Frustrated by D.D.'s failure to make payments as promised, respondent eventually stopped visiting D.D. in jail.

When respondent ceased contact, D.D. wrote to the clerk of court and a circuit judge regarding the lack of progress in his case. Over a two-month period, the judge responded to four of D.D.'s letters. Each time, the judge emailed respondent and the solicitor, including D.D.'s letter and the judge's response. D.D.'s first two letters concerned evidence in his case. In the third letter, D.D. complained about respondent and requested the public defender's office be reappointed. The judge responded by asking respondent and the solicitor to have D.D. brought to court so his request could be heard. D.D. was not brought to court and wrote to the judge again two weeks later, advising he had not had any contact with respondent despite writing respondent several letters.

Respondent made no attempt to contact D.D. after learning D.D. was contacting the judge and, instead, moved to be relieved after receiving the judge's fourth response to D.D. By the time of the hearing on respondent's motion to be relieved, it had been at least six months since respondent communicated with D.D. The court relieved respondent and reappointed the public defender.

*Matter II*

K.F. sought respondent's assistance with enforcing a child support order. Respondent agreed to pursue a contempt action for a $600 fee. He received a down payment and K.F.'s child support order. Respondent showed K.F. a copy of the contempt complaint before he filed it, but did not provide her with a filed copy. Respondent notified K.F. of the hearing date and asked one of his friends to serve K.F.'s ex-husband. However, respondent's friend failed to serve the ex-husband. Respondent could not reach the friend prior to the scheduled hearing and never learned why service did not occur. Respondent told K.F. he would have the hearing rescheduled and the documents served; however, he did not request a new hearing date.

Respondent failed to respond to K.F.'s texts and/or communicate with her family members.[1] In one text, K.F. asked respondent to return her documents and

---

[1] Because K.F. was profoundly hard of hearing, respondent communicated with her

withdraw from the case so she could hire new counsel. Respondent admits he never fully read the text. K.F. also sent respondent a certified letter with the same requests; however, respondent never collected the letter from the post office.

One month after the contempt hearing was scheduled to occur, K.F. filed a complaint with ODC. Approximately six weeks after learning of the investigation and after receiving multiple status inquiries from ODC, respondent returned K.F.'s file and had her execute a consent order relieving him. The clerk of court does not have a copy of the consent order and respondent did not retain a copy; however, K.F. was able to hire new counsel who pursued a contempt action on her behalf.

K.F. filed both a disciplinary complaint and a fee dispute. Believing the fee dispute was part of the disciplinary investigation, respondent did not cooperate with the fee dispute investigator. The Resolution of Fee Disputes Board (the Board) decided K.F. was entitled to a refund of the $200 she paid respondent. Respondent did not appeal the Board's decision and did not refund the money. Respondent claims he offered K.F. a refund, but she declined it.

*Matter III*

Respondent represented E.M. at a bond revocation hearing in August 2017. Respondent and E.M. had differing recollections about the scope of the representation and there was no written fee agreement between the parties. Respondent maintains he agreed to represent E.M. at the bond revocation hearing for $500, and in the event he was hired to represent E.M. on the underlying criminal charges, the $500 would be applied to the $1,500 fee he quoted E.M. for the entire case. E.M. contends the scope of the representation was never limited to the revocation bond hearing.

Respondent represented E.M. at the bond revocation hearing without receiving any payment. Weeks after the hearing, E.M.'s sister paid respondent $100.

Thereafter, confusion arose about whether respondent or the public defender's office was representing E.M. on his charges and a hearing was held to clarify the matter. At the hearing, respondent asked the court to consider him E.M.'s attorney, explaining he appeared at the bond revocation hearing based on a promise of being hired on E.M.'s pending charges, and he had not "been paid at all on this case."

by text and through telephone conversations with her mother and stepfather.

E.M. told the court the public defender was his attorney. The court relieved respondent and clarified the public defender represented E.M. on all pending charges.

In the weeks that followed, E.M. paid respondent an additional $300. In December 2017, based on the additional payments and E.M.'s promise to continue to make monthly payments, respondent filed a notice of appearance on each of E.M.'s pending charges. However, respondent did not file any discovery requests because he believed he could get the discovery from the public defender.

In January 2018, another hearing was held to clarify counsel in response to a letter E.M. sent to the court. At this hearing, the public defender was relieved and respondent was recognized as E.M.'s counsel. E.M. requested discovery during the hearing and the public defender offered to forward the discovery from the State to respondent. Respondent advised the court that, when he received it, he would share the discovery with E.M. Respondent received the discovery at the hearing and maintains he reviewed some of it briefly with E.M. at the courthouse. Thereafter, because E.M. was not making payments, respondent chose not to visit E.M. to review the discovery in more detail and did not provide E.M. with a copy of the discovery.

E.M. filed a motion to relieve respondent. At a March 2019 hearing, respondent stated he was willing to be relieved because E.M. was not paying him. Respondent admitted he had the discovery at his home and did not refute E.M.'s claim that he had not provided E.M. with a copy. The court relieved respondent and reappointed the public defender.

*Matter IV*

E.M. filed an application with the Board seeking the return of the $400 he and his family paid toward respondent's fees. The fee disputes coordinator emailed respondent a copy of the fee dispute. An investigator contacted respondent via email and voicemail; however, respondent failed to respond. The investigator filed a report recommending E.M.'s claim be approved in full. The circuit co-chair concurred and mailed both respondent and E.M. a letter stating the $400 repayment should be made within thirty days of the receipt of the letter. Respondent did not file an appeal and did not comply with the Board's decision. The circuit co-chair emailed respondent three times seeking his compliance with the decision before he reported respondent's noncompliance to ODC.

Respondent admits he did not respond to any communications regarding the fee dispute, did not appeal the Board's decision, and did not pay the award within the timeframe provided by the co-chair. However, respondent maintains his failure to comply with the fee dispute process and the Board's final decision was not willful; rather, respondent claims he failed to carefully read the letters and emails he received regarding the fee dispute and incorrectly believed they were all part of the disciplinary investigation.

*Matter V*

R.K. hired respondent in November 2017 to file a custody transfer action involving the Department of Social Services. R.K.'s child had been placed with a relative but, because her circumstances had improved, she expected no objection to the child being returned to her custody. R.K. paid respondent $500, which constituted unearned fees when it was received. Respondent did not have a written advance fee agreement that would permit him to treat the money as earned upon receipt, and he failed to deposit the funds into a trust account.

Respondent did not file an action in family court and did not adequately communicate with R.K. R.K. became so frustrated by her inability to reach respondent that she began having friends and relatives contact him. Respondent advised one caller that he misplaced the documents R.K. had provided to him and needed a certain replacement document in order to file the action. R.K. obtained a new copy of the document in question, but was unable to reach respondent to provide it to him.

*Matter VI*

C.F. hired respondent after his bond was revoked. Respondent and C.F. agreed upon a $2,000 fee, with a $500 down payment and monthly payments of $100. Respondent did not deposit the $500 into a trust account even though it was unearned upon receipt, and the parties did not have a written advance fee agreement entitling him to treat the money as earned upon receipt.

C.F.'s most immediate goal was to have his bond reinstated. Respondent moved to have C.F.'s bond reinstated, moved for discovery, and requested a preliminary hearing. A preliminary hearing was scheduled, but respondent requested a continuance without informing C.F. the reason for the continuance. C.F.'s wife

asked respondent why he sought the continuance, but respondent did not respond.

At a hearing on respondent's motion to reinstate bond, the judge declined the motion but ordered the solicitor to bring at least one of the charges to trial within ninety days.  Because of the judge's ruling, the solicitor ensured C.F.'s charges went to a grand jury, C.F. was indicted approximately two weeks later, and C.F. proceeded to trial on his oldest charge within the order's timeframe.  Respondent tried the case and C.F. was found not guilty.  Despite that victory, C.F. wanted to be released on bond and wrote the clerk of court and the solicitor's office requesting respondent be removed from his cases and the public defender's office be reappointed.

*Respondent's Failure to Cooperate*

Respondent submitted timely responses to ODC's notices of investigation in Matters I and II.  ODC scheduled an on-the-record interview for those matters and sent respondent a notice to appear and subpoena via certified mail.  Three weeks later, ODC emailed respondent because he had yet to collect the certified letter.  Respondent collected the mail from his post office box, but did not appear for the interview or contact ODC to explain and reschedule.  ODC's efforts to reach respondent by phone and email on the day of the scheduled interview were unsuccessful.  Respondent later explained he was preparing for trial and trying to arrange to take his elderly stepfather to Charleston for cancer treatment and simply forgot.

The interview was rescheduled for March 2, 2018.  Respondent appeared, but failed to bring all the requested records.  After the interview, ODC requested additional documentation by email.  Respondent did not respond or provide the requested documentation.  Respondent also failed to return a follow-up voicemail from ODC.  Respondent was personally served with a subpoena and notice to appear at a May 4, 2018 interview and brought the requested documentation for Matters I and II to that interview.

Respondent failed to respond to the notice of investigation for Matter III.  A reminder letter sent to respondent via certified mail was returned unclaimed.  Respondent provided testimony regarding Matter III during his May 4, 2018 interview, but did not bring a written response despite being reminded the written response was overdue in the correspondence attached to the notice to appear.  Respondent testified he intended to provide a written response, but did not offer

one until September 6, 2018.

Respondent did not respond to the notices of investigation or reminder letters in Matters IV and V. On August 13, 2018, he was personally served with a subpoena and notice to appear for an interview regarding Matters III, IV, and V. The cover letter advised that his appearance was not a substitute for his overdue written responses. Respondent appeared as scheduled and provided testimony, but did not bring the written responses. During the interview, respondent admitted he had not checked his post office box since mid- to late-July despite knowing he had several pending disciplinary investigations, and he had not provided a written response in Matter III. Even after receiving the notice that informed him of the existence of Matters IV and V, respondent chose not to check his mail prior to the interview on September 4, 2018. Respondent provided written responses in Matter III, IV, and V on September 6, 2018.

## Law

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: 1.3 (diligence); 1.4 (communication); 1.15(a) (safekeeping client property); 1.15(c) (requiring unearned fees be deposited into a trust account) 1.16(d) (refunding unearned fees upon termination of representation); 8.1(b) (failing to respond to a lawful demand for information from a disciplinary authority); and 8.4(e) (engaging in conduct prejudicial to the administration of justice). Respondent further admits his conduct violated Rule 11 of the Resolution of Fee Disputes Board, Rule 416, SCACR (cooperation with an investigation by assigned member).

Respondent also admits his conduct constitutes grounds for discipline pursuant to Rule 7(a)(1) (violating the Rules of Professional Conduct) and (3) (willfully failing to appear personally, comply with a subpoena, or respond to a lawful demand from a disciplinary authority), RLDE, Rule 413, SCACR.

## Conclusion

We find respondent's misconduct warrants a definite suspension from the practice of law in this state for one year from the date of this opinion. Accordingly, we accept the Agreement and suspend respondent for a period of one year. Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigations and prosecutions of these matters by ODC and the

Commission, and shall pay $500 in restitution to R.K.

Additionally, prior to seeking reinstatement, respondent must demonstrate his compliance with Rule 33, RLDE, Rule 413, SCACR (reinstatement following a definite suspension for nine months or more), including completion of Legal Ethics and Practice Program Ethics School within the preceding year.

Finally, within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR (duties following suspension).

**DEFINITE SUSPENSION.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**